# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Debra Vernon

November 6, 1998

Case No. (Criminal) 98-000182-00

BY JUDGE EDWARD L. HOGSHIRE

In this criminal prosecution for driving with a restricted license, the Defendant, Debra Vernon, has moved to suppress evidence flowing from an allegedly illegal search. After reviewing the briefs and listening to oral argument, the Court is prepared to rule on the Defendant's motion.

### Statement of Facts

The Defendant, Debra Vernon, was stopped while operating her vehicle by Charlottesville Police Officer R. I. Webster on February 26, 1998, around noon in downtown Charlottesville. Officer Webster observed a pink rejection sticker on her windshield and relied on that as his basis for making the stop. Pursuant to the stop, Officer Webster discovered that the Defendant was operating her vehicle with a restricted license, an offense defined in Va. Code Ann. § 46.2-301 (1997). Defendant was subsequently convicted for violating § 46.2-301 in the Charlottesville General District Court and has appealed to this Court. In the motion currently pending before the Court, the Defendant has moved to suppress the evidence of her restricted license based on an allegation of an illegal stop.

### Discussion of Authorities

The Court of Appeals has held that, in order to withstand Fourth Amendment scrutiny, an officer making an investigatory stop must possess an

"articulable and reasonable suspicion that a motorist is" in violation of the law. *Worley v. Commonwealth*, 1996 Va. App. LEXIS 47 (Jan. 30, 1996) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). In *Murphy v. Commonwealth*, 9 Va. App. 139 (1989), the Court of Appeals observed, "If the stop of the vehicle is without a warrant, the Commonwealth has the burden to prove the stop was legal." *Id.* at 143. In determining whether articulable and reasonable suspicion exists, however, a court must consider "the totality of the circumstances — the whole picture." *Id.*, at 144. Therefore, in applying the totality of circumstances test, a court must "view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." *Id.* An "inchoate and unparticularized suspicion or 'hunch'," however, is insufficient. *Id.*

Virginia law mandates annual vehicle inspections. Va. Code Ann. § 46.2-1158 (1989). Such a law promotes the Commonwealth's interest in public safety by helping to ensure that only properly-functioning vehicles are permitted to operate on the roads. If a vehicle fails the annual inspection, it must display a rejection sticker. "A rejection sticker shall be valid for fifteen calendar days beyond the day of issuance." *Id.* Under the statute, therefore, an individual has a fifteen-day window within which to repair the vehicle. This grace period, however, does not permit unrestricted operation of the vehicle.

> Each day during which such motor vehicle, trailer, or semi-trailer is operated on any highway in this Commonwealth after failure to comply with this law shall constitute a separate offense. However, no penalty shall be imposed on any owner or operator for operation of a motor vehicle, trailer, or semi-trailer after the expiration of a period fixed for the inspection thereof, over the most direct route between the place where such vehicle is kept or garaged and an official inspection station, for the purpose of having it inspected pursuant to a prior appointment with such station.

Va. Code Ann. § 46.2-1157 (1997). Consequently, the statute permits the owner to drive directly to an official inspection station.

The Commonwealth argues that these statutory provisions create a regime in which an officer has reasonable and articulable suspicion to make a stop *anytime* that he or she witnesses a vehicle with a rejection sticker. This proposition simply extends too far. Individuals can be operating a vehicle lawfully even while displaying a rejection sticker, as § 46.2-1157 indicates. For example, if a person just had the car repaired and proceeded to drive to the inspection station, then not only is he operating it lawfully, but he is also

driving a car without any safety defects. To subject such a person to the possibility of multiple investigatory stops is untenable.

Although "it is clear that the state has a vital interest in enforcing its motor vehicle laws regarding licensure and equipment," *Simmons v. Commonwealth*, 238 Va. 200, 203 (1989), it is equally clear that the Commonwealth permits individuals to operate vehicles with rejection stickers in limited circumstances under § 46.2-1157. If Officer Webster observed that the rejection sticker was peeling or faded (suggesting the expiration of the fifteen days) or noticed visible defects along with the rejection sticker, then the stop may have been permissible. The record, however, indicates that the only basis upon which Officer Webster relied in making the stop was the rejection sticker.

## *Conclusion*

Because Officer Webster lacked the requisite articulable and reasonable suspicion, this Court hereby grants the Defendant's suppression motion.